UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEBORAH C. MORRISON,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                    Defendant. | Case No. C09-5512KLS<br><br>ORDER REVERSING AND<br>REMANDING THE COMISSIONER'S<br>DECISION TO DENY BENEFITS |

Plaintiff, Deborah C. Morrison, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ('SSI') benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge pursuant to 28 U.S.C.§636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 49 years old.[1] Tr. 24. She has a high school education and past relevant work as a switchboard operator, customer service representative and cashier/checker. Tr. 22, 82, 337, 340.

On September 26, 2005, plaintiff filed applications for disability insurance and SSI

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER - 1

benefits, alleging disability as of January 28, 2005, due to post traumatic stress disorder, manic depression, anxiety, and migraine headaches. Tr. 14, 42, 59. Both applications were denied initially and on reconsideration. Tr. 14, 24-26, 33, 36. A hearing was held before an administrative law judge ("ALJ") on September 11, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 308-42.

On October 23, 2008, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of depression, a bipolar disorder and a borderline personality disorder;

(3) at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4) after step three but before step four, plaintiff had the residual functional capacity to perform the full range of work at all exertional levels,[3] with the capacity to perform complex and detailed work activities, follow routines, exercise judgment, and interact appropriately with supervisors, co-workers and members of the public; and

(5) at step four, plaintiff was capable of performing her past relevant work.

Tr. 14-23. Plaintiff's request for review was denied by the Appeals Council on June 26, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 2

On August 21, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on November 16, 2009. (Dkt. #11). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

    (a)    the ALJ erred in finding plaintiff's fibromyalgia to be a non-severe impairment;

    (b)    the ALJ erred in evaluating the opinion of Lisa Cosgrove, D.O.;

    (c)    the ALJ erred in assessing plaintiff's credibility;

    (d)    the ALJ erred in evaluating the lay witness evidence in the record;

    (e)    the ALJ erred in assessing plaintiff's residual functional capacity; and

    (f)    the ALJ erred in finding plaintiff to be capable of performing her past relevant work.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

ORDER - 3

Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Did Not Err in Finding Plaintiff's Fibromyalgia to Be Non-Severe

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. §404.1520, §416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R.§ 404.1520(a)(4)(iii), (c),§416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R.§404.1521(b),§416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff had severe impairments consisting of depression, a bipolar disorder and a borderline personality disorder. Tr. 16.  The ALJ also found in relevant part as follows:

> The claimant has fibromyalgia syndrome.  On April 12, 2007, the claimant underwent evaluation with Yun-Sun Choe, M.D., for generalized pain.  Dr. Choe's physical evaluation revealed tenderness in the right shoulder, both hands, both hips, both knees and both ankles.  Dr. Choe assessed a history and

ORDER - 4

>physical examination consistent with fibromyalgia. Exhibit 13F/6-7. One month later, Dr. Choe noted improvement in the 'FMS' with medication. Exhibit 13F/2. There is no objective medical evidence to show that the claimant's fibromyalgia caused significant vocational limitations for at least 12 consecutive months, I find the claimant's hypertension is non-severe.

Tr. 18. Plaintiff argues the ALJ erred in so finding, noting that Dr. Choe found tenderness and that she herself reported pain, a numbing and tingling sensation, and an inability to tolerate one of her medications. While plaintiff is correct that the fact that she may have been doing a little better on her medication does not equate to a disappearance of her symptoms, and that her medical history and the physical examination performed by Dr. Choe may have been consistent with a diagnosis of fibromyalgia, the mere diagnoses of a condition and the presence of signs and symptoms thereof are insufficient to establish severity.

As noted above, the relevant issue at step two is the effect, if any, a claimant's mental or physical impairments has on his or her ability to perform basic work activities. Accordingly, the existence of an impairment or signs and symptoms alone, without there being any link to specific work-related limitations is not enough to support a finding of severity. That is, plaintiff has not shown, and the record does not contain any evidence that, her fibromyalgia has resulted in such limitations. Contrary to plaintiff's contention, therefore, she has failed to show her fibromyalgia has had more than a minimal impact on her ability to work. For these reasons, the undersigned finds no error on the part of the ALJ here.[4]

II.  The ALJ Erred in Evaluating the Opinion of Dr. Cosgrove

The ALJ is responsible for determining credibility and resolving ambiguities and

---

[4] Plaintiff also argues that the fatigue, pain and irritable bowel disorder accompanying her diagnosis of fibromyalgia, should have been found to be severe as well. But the ALJ did not err in expressly finding plaintiff's irritable bowel syndrome to be non-severe, given that "there is no objective medical evidence to show" it was "more than transient" or caused "significant vocational limitations." Tr. 18. The same is true with respect to plaintiff's allegations of pain and fatigue. See SSR 85-28, 1985 WL 56856 *4 ("At the second step of [the] sequential [disability] evaluation process, . . . [objective] medical evidence alone is evaluated in order to assess the effects of the impairment(s) on [a claimant's] ability to do basic work activities."). Thus, the undersigned finds here too thart the ALJ did not err.

ORDER - 5

conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v.

ORDER - 6

Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In late February 2006, plaintiff was evaluated by Lisa Cosgrove, D.O., who diagnosed her with a chronic dysthymic disorder in partial remission and a borderline personality disorder, and assessed her with a global assessment of functioning ("GAF") score of 52-55.[5] Tr. 159. In addition, Dr. Cosgrove opined in relevant part as follows:

> . . . [Plaintiff's prognosis is f]air to good with the following recommendation: Provided the claimant will continue to see a psychiatrist for medication management on a consistent basis and engage in consistent weekly psychotherapy. . . . the likelihood that she could have increased stabilization and quite likely improvement in her social functioning, as well as the possibility of occupational functioning independently, within the next 1-2 years would be considered good.
>
> . . . The claimant shows no impairment in her cognitive functioning or judgment that would preclude her from managing her own funds

---

[5] A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34).

ORDER - 7

independently.

> . . . At this time, without the support of a psychiatrist, as well as being engaged on a long-term weekly basis in psychotherapy, the likelihood that the claimant would be able to sustain gainful employment for longer than a few months at a time, would be considered guarded to poor. This is, in my best professional opinion, also consistent with the claimant's [borderline personality disorder] diagnosis due to her marked and intense fears of abandonment and inability to tolerate any changes in her environment, as well as her projection outward of her (largely unconscious) self-belief that she is a bad person, and therefore an enactment of that in her outward environment to validate that self-belief, causing abrupt loss of employment. Again, with weekly psychotherapy and continued psychiatric evaluation and medication management, she likely could sustain gainful employment within 1-2 years.

Tr. 159-60.

The ALJ addressed Dr. Cosgrove's opinion as follows:

> Following her evaluation of the claimant in February 2006, Dr. Cosgrove opined that the claimant's prognosis was fair to good, and that with weekly psychotherapy, continued psychiatric evaluation and medication management, the claimant could sustain employment within one to two years. Exhibit 5F/6-7. I give this opinion some weight; however, I note that there is nothing in the record that shows that the claimant could not work at the time of Dr. Cosgrove's evaluation.

Tr. 21. Plaintiff argues these reasons for rejecting Dr. Cosgrove's opinion are not legitimate. The undersigned agrees. While it may be that Dr. Cosgrove is the only medical source opinion in the record whose report states or implies that plaintiff is incapable of working, the ALJ did not specifically discuss what other evidence in the record he saw as contradicting Dr. Cosgrove's conclusions. Accordingly, the Court is without a proper basis upon which to assess the validity of the ALJ's findings here.

III.     **The ALJ Erred in Assessing Plaintiff's Credibility**

Questions of credibility are solely within the control of the ALJ. <u>Sample</u>, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is

ORDER - 8

based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

In this case, the ALJ discounted plaintiff's credibility regarding "the intensity, persistence and limiting effects" of her alleged symptoms in relevant part, because they were inconsistent with the objective medical evidence in the record. Tr. 20-21; see Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).  Specifically, while plaintiff

ORDER - 9

alleged she was "unable to sustain basic work activities on a regular and continuing basis due to her mental impairments, which caus[ed] her to miss work and render[ed] her unable to complete tasks, make decisions, or concentrate for long periods of time," the ALJ found:

> The claimant's mental status examinations were consistently within normal limits. Exhibits 2F, 5F, 15F, 17F. During her evaluation with Dr. [Vanraj] Varu[, M.D.], the claimant's thought processes were linear, cohesive, connective, and goal directed; the claimant denied mood swings and psychotic symptoms; cognitively, the claimant was alert and oriented, showed good concentration, and was able to abstract; and long term and recent memory was intact, current judgment was fair, and insight into mental illness was good. Exhibit 2F/1-4. During her evaluation of the claimant, Dr. Cosgrove noted there was no evidence of paranoia, delusions, or hallucinations; there was no circumstantiality or tangentiality; associations were tight and followed a logical thought pattern; and the claimant could recall three out of three objects at one minute and two out of three objects at five minutes, could spell the word "world" forward and backward on her first attempt, could perform serial threes from 28 to ten without error, and could abstract. Exhibit 5F. At her evaluation with Dr. [Terry] Douglas[, Ph.D.], the claimant's GAF score was 60, which suggests only mild to moderate symptoms. Exhibit 17F/35. During her evaluation with Amy Jacobsen, the claimant was oriented to person, place, time and situation; behavior and psychomotor behavior was unremarkable; speech was appropriate; memory was intact; attitude was cooperative; attention was maintained; reasoning, impulse control, judgment and insight were fair; thought processes were logical; and the claimant did not express suicidal ideation. Exhibit 15F/1-2.

Id.

Plaintiff disputes the ALJ's finding that her mental status examinations were consistently within normal limits, noting that at least some of the medical evidence in the record reveals less than fully normal mental status findings, including a couple of fairly low GAF scores. See Tr. 114, 120, 137, 139-40, 284, 291, 295, 301. But although the ALJ may have overstated the case somewhat here, the vast majority of that evidence does show plaintiff's mental status largely fell within the normal range. See Tr. 111-13, 122, 138, 154, 158-59, 172, 182, 184, 188, 190, 192, 196, 238-39, 241-42, 245, 248, 250-51, 268-69, 271, 276-78, 281, 283, 286, 288, 290, 293, 299-300, 258, 305. As such, the undersigned finds the ALJ overall properly discounted plaintiff's

ORDER - 10

credibility in part for this reason.

The ALJ also discounted plaintiff's credibility for the following reason:

> The claimant has reported a wide range of activities which is inconsistent with the alleged severity of her impairments. At her evaluation with Dr. Cosgrove, the claimant reported she could read, crochet, and play computer games. Exhibit 5F/4. At her hearing, the claimant testified that she was her husband's primary care giver while he was ill with lung cancer. She lives in a separate unit with her friends, interacts with them daily and she went out approximately three times a month with friends.

Tr. 21. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be 'utterly incapacitated' to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Plaintiff argues the activities cited by the ALJ are not inconsistent with the symptoms she reported, and thus was not a valid reason for discounting her credibility. The undersigned agrees the ALJ erred in discounting plaintiff's credibility based on her daily activities. While the record does show plaintiff has engaged in activities such as those noted by the ALJ, it fails to establish clearly that she performed them for a substantial part of her day or that they were transferrable to a work environment. See 103-07, 157, 188, 190, 192, 222, 234-36, 268, 276, 284, 286, 291, 299-300, 316, 318-20, 323-24, 330-32. For example, while plaintiff may have been the caregiver for her husband at one point, there is no indication in the record as to the nature or extent of the care she provided in that regard.

ORDER - 11

The only legitimate reason the ALJ gave for discounting plaintiff's credibility, therefore, was that her symptom complaints were inconsistent with the medical evidence in the record. A claimant's symptom testimony, however, may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (*en banc*)); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995). Accordingly, the credibility determination overall here was improper.[6]

IV. <u>The ALJ Erred in Evaluating the Lay Witness Evidence in the Record</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's husband, in which he sets forth his observations of plaintiff's symptoms and ability to function. See Tr. 103-07. The ALJ found those observations supported plaintiff's allegations, but accorded them "little weight," stating they

---

[6] Defendants asserts plaintiff "does not challenge the ALJ's finding that [her] credibility was undermined by her lack of work effort and lack of desire to be employed." (Dkt. #14, p. 8 (citing Tr. 21)). The lack of work effort and lack of desire to be employed noted by defendant here was, as discussed in greater detail below, noted by Dr. Douglass in evaluating her. See Tr. 276, 281. But the ALJ discussed this evidence only in the context of evaluating the opinions of Dr. Doublass, and did not, either expressly or clearly by implication, find plaintiff to be less than fully credible on this basis. See Tr. 21.

ORDER - 12

were "largely based" on her "self-report" to him and were "not consistent with the medical evidence of record." Tr. 21. Plaintiff argues, and the undersigned agrees, that the first reason the ALJ provided here is not valid. It is clear from a plain reading of plaintiff's husband's statement that at least some of the observations he noted therein were based on his own observations, and not merely his wife's self-report.

In terms of inconsistency with the medical evidence in the record, the undersigned finds the ALJ did not err in regard to the observations of plaintiff's husband based on plaintiff's fibromyalgia, given that the ALJ, as discussed above, properly found that condition to be a non-severe impairment. See Lewis, 236 F.3d at 511 (ALJ may discount lay testimony that conflicts with medical evidence); Vincent, 739 F.2d at 1395 (same); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); but see Bruce v. Astrue, 557 F.3d 1113, 1116 (2009) (improper for ALJ to discredit testimony of claimant's wife as not supported by medical evidence in record).[7]

The objective medical evidence in the record, including that of Dr. Cosgrove, also for the most part does not support plaintiff's husband's observations that plaintiff was forgetful, got easily confused, was afraid of leaving the house or going into stores, and would go to bed for one to two days due to depression. See Tr. 113-14, 120, 122, 137-40, 158-60, 172, 184, 188, 190, 192,

---

[7] In so holding, the Ninth Circuit in Bruce relied on its prior decision in Smolen, which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). The Court of Appeals, however, did not address its earlier decisions in Bayliss, Lewis and Vincent, in which, as discussed above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511 (citing Vincent, 739 F.2d at 1995); see also Bayliss, 427 F.3d at 1218. Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Bayliss, Lewis or Vincent was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. Plaintiff, though, has not challenged this basis for discounting her husband's statement. Accordingly, the undersigned shall treat those earlier holdings as being still good law.

ORDER - 13

196, 238-39, 242, 246, 248, 250, 258, 268-69, 271, 276-78, 281, 284, 286, 288, 290-91, 293, 295, 299-301, 305. Thus, the undersigned finds no error on the part of the ALJ here as well. On the other hand, plaintiff's husband did state that plaintiff did "not react well to [a]ny change" (Tr. 106), which Dr. Cosgrove–whose opinion, as discussed above, the ALJ erred in evaluating–also commented on in her concluding remarks (Tr. 159 (noting plaintiff's inability to tolerate any change in her environment)). As such, the undersigned does find the ALJ erred in evaluating the lay witness evidence in the record in this regard.

V.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, as noted above, the ALJ assessed plaintiff with the residual functional capacity to

ORDER - 14

perform "the full range of work at all exertional levels," to "perform complex and detailed work activities and instructions, follow routines, and exercise judgment," and "interact appropriately with supervisors, coworkers, and members of the public." Tr. 20. Because the ALJ erred in his evaluation of the medical evidence in the record (specifically, Dr. Cosgrove's opinion) and the observation of plaintiff's husband concerning her not reacting well to change, and in assessing plaintiff's credibility, the undersigned agrees with plaintiff that the ALJ's assessment of her RFC cannot be said for certain to accurately encompass all of her limitations.[8]

The ALJ, therefore, erred in assessing plaintiff's residual functional capacity. However, the undersigned disagrees with plaintiff that the ALJ committed any error in his findings with respect to the opinion of Terry Douglass, Ph.D., concerning her ability to work. In early August 2006, Dr. Douglass stated in relevant part:

> . . . When I inquired about her going to work so she has some money Debbie reacted as if it was a bizarre idea and adamantly opposed the idea–stating she has applied for disability. She flatly stated she would not work and could not work. I suggested that she start looking for part time positions where she could learn skills and being around people–she rejected the idea. I suggested that she look for positions which she could do work from home. She agreed she would.
>
> . . .
>
> INSTRUCTIONS/RECOMMENDATIONS/PLAN:
>
> . . .
>
> 5. seek out employment positions–start w[ith] part time even volunteer positions to get out of the house, meet people and develop skills.

---

[8] Plaintiff further asserts the ALJ erred in not including in her RFC assessment any limitations stemming from her depression, bipolar disorder and borderline personality disorder, even though the ALJ found they each constituted a severe impairment. But the mere fact that an impairment is severe, does not necessarily mean that that impairment has resulted in functional limitations sufficiently significant to effect a claimant's ability to perform work activities, and, other than the conclusions of Dr. Cosgrove (who did not diagnose plaintiff with a bipolar disorder), evidence of such limitations are absent.

ORDER - 15

Tr. 281-82 (emphasis added). In early November 2006, Dr. Douglass further stated in relevant part as follows:

> [Plaintiff's s]pouse demanded that I tell him that with his input today that I now view [plaintiff as] totally forever unemployable. I stated to him that I rarely view clients as unemployable forever. That I think Debbie has never really looked for work nor has she ever wanted employment. I told him that last session I recommended she <u>explore opportunities and seek voch rehabilitation [s]ervices to help her develop work skills</u>. T[h]at her telling me she does not function during the day does not mean she can [sic] not function at night when she normally is awake. When she tells me she does not want to go to work: I respond [that] most adults including myself don't always want to go to work. I mentioned that I do believe she <u>could be employed part time and go through vohtech training</u>. . . .

Tr. 276 (emphasis added).

With respect to this last statement regarding part-time employment, ALJ stated that "in light of Dr. Douglas[s]'s examination notes, mental status exams and the context in which he made the statement to" plaintiff's husband, there was "no reason to interpret his suggestion of part time employment as a permanent limitation." Tr. 21. Plaintiff argues that rather than speculate as to what Dr. Douglass actually meant in terms of part-time employment, the ALJ should have clarified that statement with him. But the undersigned finds nothing speculative about the ALJ's determination here. As clearly can be seen, Dr. Douglass in early August 2006, was encouraging plaintiff to start looking for part-time or volunteer positions for the purpose of gaining skills and experience. At no time did Dr. Douglass indicate at that time that she was limited to such work. In again stating plaintiff could be employed part-tine in early November 2006, Dr. Douglass merely was reiterating his earlier recommendation that she begin working in that capacity. Accordingly, the ALJ did not err in this instance.

VI. <u>The ALJ's Step Four Analysis</u>

Plaintiff has the burden at step four of the disability evaluation process to show that she is

ORDER - 16

unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). As noted above, the ALJ found plaintiff to be capable of returning to her past relevant work. Plaintiff argues the ALJ erred in so finding by failing to conduct a functional analysis of the mental and physical requirements of her past jobs. In regard to the physical requirements thereof, there was no error here given that the ALJ did not err in finding plaintiff to be capable of performing work at all exertional levels.

As for the mental demands of plaintiff's past relevant work, the ALJ properly made the assessment plaintiff claims was not conducted when he stated:

> In comparing the claimant's residual functional capacity with the mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. The claimant's description of these jobs, as well as a description of these jobs as they are performed in the national economy, indicate that they are within the residual functional capacity stated above. Accordingly, I find that the claimant is capable of performing past relevant work as a switchboard operator, a customer service representative, or a cashier/checker, as those jobs do not require activities outside the scope of the claimant's residual functional capacity.

Tr. 22; see Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (to find claimant not disabled at step four, ALJ must find he or she can perform either actual functional demands and job duties of particular past relevant job, or functional demands and job duties of past relevant occupation as generally required by employers throughout national economy). These findings, furthermore, are supported by the testimony both plaintiff and the vocational expert provided at the hearing. See Tr. 332-41. On the other hand, the errors the ALJ committed in evaluating the medical and lay witness evidence in the record, and in assessing plaintiff's credibility and her residual functional capacity, call into question the ALJ's step four determination as well, and thus warrants remand for further consideration of this and the other issues discussed above.

ORDER - 17

VII.     Remand for Further Administrative Proceedings Is Appropriate

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and functional limitations, the lay witness evidence in the record concerning plaintiff's ability to handle change, plaintiff's credibility and residual functional capacity, and her ability to return to her past relevant work, the undersigned finds it to be proper to remand this matter to the Commissioner for further administrative proceedings.

Should it be determined on remand that plaintiff cannot return to her past relevant work, the Commissioner shall go on to consider at step five of the sequential disability evaluation

ORDER - 18

process, whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy. Plaintiff argues this matter should be remanded to a different ALJ. The undersigned, however, finds such an order to be unnecessary here, although the Commissioner certainly may decide to do so on remand if appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings.

DATED this 28th day of July, 2010.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

ORDER - 19